UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARVIN WEINAR,                                    :
                                                  :     **Case No. 13-CV-01511 (DAB)**
      Plaintiff,                              :     **ECF Case**
                                                  :
                                                  :
                                                  :
vs.                                               :
                                                  :
WILLIAM LEX,                                      :
                                                  :
      Defendant.                              :
                                                  :
-------------------------------------------------------------X

### PLAINTIFF MARVIN WEINAR'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT WILLIAM LEX'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Liam O'Brien (LO 3090)
Francis M. Curran (FC 1158)
McCormick & O'Brien LLP
9 East 40th St. 4th Floor
New York, NY 10016
Tele: (212) 286-4471
Fax:  (212) 504-9574
email:  lobrien@mcoblaw.com
        fcurran@mcoblaw.com

**Counsel for Plaintiff Marvin Weinar**

# Table of Authorities

**Federal Cases**

**United States Supreme Court Cases**

Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165 (1939)
……………………………………………………………………………………8

**Other Federal Cases**

Bensusan Restaurant Corp. v. King, 126 F.3d 25 (2d. Cir 1997)
……………………………………………………………………………………5

Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260 (S.D.N.Y. 1991)
……………………………………………………………………………………7

Correspondent Servs. Corp. v. J.V.W. Investments Ltd., 120 F.Supp.2d 401 (S.D.N.Y. 2000)
…………………………………………………………………………………….6

CutCo v. Naughton, 806 F.2d 361 (2d Cir. 1986)
……………………………………………………………………………………5

Davis v. United States, 2004 U.S. Dist. LEXIS 2551, 2004 WL 324880 (S.D.N.Y.)
…………………………………………………………………………………….6

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95 (2d Cir. 2006)
……………………………………………………………………………………1

DiStefano v. Carozzi North America, Inc., 286 F.3d 81 (2d Cir. 2001)
……………………………………………………………………………………5

Doe v. City of New York, 583 F. Supp. 2d 444 (S.D.N.Y. 2008)
……………………………………………………………………………………5

Hall Street Associates, LLC v. Mattel, Inc., 552 U.S. 576 (2008)
……………………………………………………………………………………1

Lehigh Valley Industries, Inc. v. Birenbaum, 389 F. Supp. 798 (S.D.N.Y. 1975)
……………………………………………………………………………………7

Penguin Group (USA), Inc. v. American Buddha, 609 F.3d 30 (2d Cir. 2010)
……………………………………………………………………………….4, 5

Reliance Ins. Co. v. Polyvision Corp., 474 F.3d 54 (2d Cir. 2007)
……………………………………………………………………………………8

Rutland Railway Corp. v. Brotherhood of Locomotive Engineers, 307 F.2d 21 (2d Cir. 1962)
………………………………………………………………………………….……8

STMicroelectronics, N.V. v. Credit Suisse Securities (USA), LLC, 648 F.3d 68 (2d. Cir. 2011)
………………………………………………………………………………….……1

Sunward Electronics, Inc. v. McDonald, 362 F.3d 17 (2d Cir. 2004)
………………………………………………………………………………….....5, 6

Wallace v. Buttar, 378 F.3d 182 (2d Cir. 2004)
………………………………………………………………………………….……1

**State Cases**

Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988)
………………………………………………………………………………….……6

McGowan v. Smith, 52 N.Y.2d 268, 419 N.E.2d 321, 437 N.Y.S.2d 643 (N.Y. 1981)
………………………………………………………………………………….……5

**Federal Statutes**

28 U.S.C. § 1391
………………………………………………………………………………….……8

9 U.S.C. § 9
………………………………………………………………………………….1, 9

**State Statutes**

CPLR § 302 ……………………………………………………………………5, 6, 7

**INTRODUCTION**

Plaintiff Marvin Weinar ("Plaintiff" or "Dr. Weinar") hereby submits his Memorandum of Law in Opposition to the Motion of Defendant William Lex ("Defendant" or "Mr. Lex") to Dismiss, on jurisdictional grounds, the Plaintiff's Petition to Confirm Arbitration Award. Based upon the law and the undisputed facts in this matter, the Defendant's jurisdictional argument is nothing more than a transparent and futile attempt to delay the inevitable confirmation of the arbitration award entered on February 14, 2013 ("the Award") by the Financial Industry Regulatory Authority ("FINRA") in <u>Marvin Weinar v. William Lex and Dinosaur Securities, LLC</u>, FINRA Case No. 10-05603. The award was in favor of Dr. Weinar in the amount of $345,870.64.

Because the Defendant is unable to meet the high burden of vacating the Award under the Federal Arbitration Act[1], he has apparently decided that his next best option is to attempt to delay confirmation of the Award into a judgment, and thereby continue to avoid paying or otherwise satisfying the Award. Indeed, this approach is consistent with his past pattern; Mr. Lex was found jointly and severally liable to investors in some of the same investments purchased by Dr. Weinar in an amount in excess of $800,000.00 in a 2009 arbitration. Rather than paying that award, he filed a motion to vacate the award in Pennsylvania state court and then appealed when the award was confirmed. However, the undisputed facts show that Defendant regularly and

---

[1] The standard for vacating an arbitration award is determined by Section 10(a) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a), which provides in relevant part that a court may make an order vacating the award upon the application of any party to the arbitration only in the following circumstances: (1) Where the award was procured by corruption, fraud, or undue means; (2) Where there was evident partiality or corruption in the arbitrators, or either of them; (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy. See Hall Street Associates, LLC v. Mattel, Inc., 552 U.S. 576, 582 (2008). Moreover, "[i]t is well established that courts must grant an arbitration panel's decision great deference." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004). In order to overcome this deference, a "party petitioning a federal court to vacate an arbitral award bears [a] heavy burden." Id. See also D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) ("a party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high") and STMicroelectronics, N.V. v. Credit Suisse Securities (USA), LLC, 648 F.3d 68, 74 (2d. Cir. 2011).

1

routinely did business in the state of New York. It is not disputed that he was a FINRA-licensed registered representative of McGinn Smith & Compnay, Inc. ("McGinn Smith"), a New York-based broker-dealer. It is also without dispute that Defendant was an integral part[2] of a Ponzi scheme run by McGinn Smith and others which, through the investments that were at issue in the underlying arbitration proceeding, defrauded millions of dollars from hundreds of investors. Defendant cannot seriously dispute that he had ongoing business activities transacted in the State of New York. In particular, he cannot dispute that he made solicitations successfully designed to induce Dr. Weinar to make investments in McGinn Smith-created entities that were incorporated under New York law and were the basis for the underlying arbitration Award. Accordingly, his arguments that he is not subject to personal jurisdiction in New York are meritless.

## FACTUAL BACKGROUND

McGinn Smith was a broker-dealer registered with the United States Securities and Exchange Commission ("SEC") and was a member firm of FINRA. It was a New York corporation with its principal place of business in New York. From January 1983 to December 2009, Defendant was a registered representative of McGinn Smith. FINRA registration materials show that Defendant was also listed as being employed by McGinn Smith from December 1982 to December 2009, and indicated that the employer location was in New York. See Exhibit A to the Declaration of Francis M. Curran dated March 27, 2013 ("Curran Declaration").

Dr. Weinar opened an account with McGinn Smith through Defendant in 2004. See the Affidavit of Marvin Weinar dated March 27, 2013 at ¶ 3 ("Weinar Affidavit"). During the course of Dr. Weinar's relationship with Defendant and McGinn Smith, he invested a total of $444,000.00 in corporate notes; all of these investments were New York corporations or business

---

[2] Evidence was presented at the hearing showing that every one of Defendant's customers with McGinn Smith purchased the Ponzi scheme investments. See Weinar Affidavit at ¶12.

entities created by McGinn Smith (with New York choice of law and venue provisions for any disputes) and were solicited by Mr. Lex. See Weinar Affidavit at ¶4. Dr. Weinar received numerous letters from Defendant; each of them had (in accordance with applicable securities industry rules) language stating "SECURITIES OFFERED THROUGH MCGINN, SMITH & CO., INC., 99 PINE STREET, ALBANY, NY 12207" (capitalization in original). See Weinar Affidavit at ¶ 6; Exhibit C. Dr. Weinar also regularly received monthly account statements relating to the investments purchased through Defendant; the statements identified Defendant as "your financial consultant" and were sent from a New York address with a New York telephone number. See Weinar Affidavit at ¶ 7; Exhibit D.

McGinn Smith left the securities business in late 2009/early 2010, and its retail operations were acquired by Dinosaur Securities LLC ("Dinosaur") on or about February 2010. In doing so, Dinosaur took over all of the offices, clients, accounts, staff, management, and registered representatives of McGinn Smith – including Dr. Weinar's account and his assigned registered representative, Mr. Lex. Dinosaur's principal office was in New York, New York, and the branch office from which Mr. Lex and Dinosaur serviced Dr. Weinar's account was located in Clifton Park, New York. See Weinar Affidavit at ¶ 8; Exhibit E.

On or about April 20, 2010, the SEC filed an action against McGinn Smith, its principals, and all of the issuers of the notes purchased by Dr. Weinar in the United States District Court for the Northern District of New York. In response to the SEC's request, the Court entered an immediate Temporary Restraining Order placing all of the entities (including the issuers of the notes purchased by Dr. Weinar) in receivership. See Weinar Affidavit at ¶ 5; Exhibit B. In addition, the principals of McGinn Smith were recently convicted of conspiracy, mail fraud, wire fraud, securities fraud, and filing false tax returns; the crimes related to the Ponzi scheme

investments created by McGinn Smith – including the corporate notes sold by Defendant to Dr. Weinar. See Weinar Affidavit at ¶ 11; Exhibit F.

As required by his account agreements, Dr. Weinar initiated an arbitration proceeding (Marvin Weinar v. William Lex and Dinosaur Securities, LLC, FINRA Case No. 10-05603) ("the Arbitration") against Mr. Lex and Dinosaur[3] to recover his investment losses by submitting a Statement of Claim to FINRA Dispute Resolution in New York. See Weinar Affidavit at ¶ 9. The Arbitration was administered at all times by the New York office of FINRA Dispute Resolution. See Curran Declaration at ¶ 4.

The FINRA arbitration hearing was held from January 29 through February 1, 2013 in Philadelphia, Pennsylvania. A panel of three arbitrators heard testimony, reviewed documents, and otherwise considered all of the evidence and arguments submitted by the parties. In the Award, issued on February 14, 2013, the arbitrators found for Dr. Weinar and against the Defendant, and awarded Dr. Weinar the total amount of $345,870.64. A copy of the Award is attached as Exhibit B to the Curran Declaration. Dr. Weinar filed a Petition to Confirm the Award in New York Supreme Court. See Curran Declaration at ¶ 6. Defendant removed the action to this Court and, rather than attempting to vacate or modify the Award under the Federal Arbitration Act, filed a Motion to Dismiss based upon an alleged lack of personal jurisdiction.

## LEGAL ARGUMENT

### I. LEX IS SUBJECT TO PERSONAL JURISDICTION IN NEW YORK

It is well-settled that the "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." Penguin Group (USA), Inc. v.

---

[3] Due to the terms of the order creating the SEC Receivership, Dr. Weinar was barred from naming McGinn Smith in the Arbitration. See Weinar Affidavit at ¶ 5. Dr. Weinar settled with Dinosaur prior to the final hearings in the Arbitration. See Weinar Affidavit at ¶ 10.

American Buddha, 609 F.3d 30, 34-35 (2d Cir. 2010)[4]. When personal jurisdiction is challenged by way of a motion to dismiss, the burden is on the plaintiff to "make a prima facie showing that jurisdiction exists" by making "legally sufficient allegations of jurisdiction including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." Id. at 35 (internal quotations and alterations omitted). In doing so, courts construe the pleadings and affidavits in the light most favorable to the Plaintiff, resolving all doubts in his favor. DiStefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001) (citing CutCo v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)).

In both diversity and federal question cases, federal courts must determine questions of personal jurisdiction in accordance with the laws of the state in which they sit. Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27 (2d. Cir 1997). "To establish personal jurisdiction, this Court must apply the law of New York, the state in which it sits." Doe v. City of New York, 583 F. Supp. 2d 444, 447 (S.D.N.Y. 2008). In this action, Dr. Weinar has alleged that Defendant is subject to jurisdiction pursuant to New York's "long arm" statute, CPLR § 302(a)(1). That provision states, in relevant part, that a court may exercise personal jurisdiction over any non-domiciliary, who in person or through an agent: transacts any business within the state or contracts anywhere to supply goods or services in the state. "Essential to the maintenance of a suit against a nondomiciliary under CPLR 302 (subd [a], par 1) is the existence of some articulable nexus between the business transacted and the cause of action sued upon." McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 437 N.Y.S.2d 643 (N.Y. 1981).

To establish jurisdiction under this provision, the Second Circuit has held that a plaintiff must show that the defendant transacts business in New York and that the "claim arises from those business transactions." Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir.

---

[4] Certified question answered, 16 N.Y.3d 295 (2011), answer conformed to 640 F.3d 497 (2d Cir. 2011).

2004). However, "Plaintiffs 'need not show regular or continuous activity in the state; even a single act within New York is sufficient to confer jurisdiction under § 302(a) if it has sufficient nexus with the cause of action.'" Davis v. United States, 2004 U.S. Dist. LEXIS 2551, 2004 WL 324880, at *5 (S.D.N.Y.) (quoting Correspondent Servs. Corp. v. J.V.W. Investments Ltd., 120 F.Supp.2d 401, 404 (S.D.N.Y. 2000)). Under New York law, even one transaction is sufficient to support jurisdiction under CPLR § 302 if a defendant's actions in New York were purposeful and if there is a substantial relationship between the transaction and the claim asserted. Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988).

In applying these standards to this case, Mr. Lex's actions clearly bring him within the jurisdiction of New York under the long arm statute. It is undisputed that Mr. Lex was licensed with FINRA and New York State as a registered representative of McGinn Smith, a securities broker-dealer located in New York. He solicited the Plaintiff to invest in the notes issued by New York corporations that are the underlying basis of this action, and delivered the investment paperwork to McGinn Smith in New York. As a registered representative, he received commissions and other compensation from McGinn Smith for the sale of these investments to the Plaintiff. He is identified as the Plaintiff's "financial consultant" on the McGinn Smith monthly account statements sent from New York, and his own letterhead states that all securities (including the investments he sold to Dr. Weinar, which are the underlying basis for this action, were "OFFERED THROUGH MCGINN, SMITH & CO., INC., 99 PINE STREET, ALBANY, NY 12207" (capitalization in original). These purposeful actions by Mr. Lex himself are more than sufficient to show that he "transacted business" within the State of New York, and the business he transacted (the sale of securities) is more than "substantially related" to the underlying claims at issue.

However, even if Mr. Lex's own actions weren't enough, the actions of his co-conspirators in the McGinn Smith Ponzi scheme are sufficient to establish jurisdiction over him under CPLR 302(a). Under that provision, "Courts have defined 'agent' broadly to include not only a defendant's formal agents, but also, under certain circumstances, a defendant's co-conspirators." Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991) citing Lehigh Valley Industries, Inc. v. Birenbaum, 389 F. Supp. 798, 806-7 (S.D.N.Y. 1975), aff'd. 527 F.2d 87 (2d Cir. 1975). "It is well established that acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under CPLR 302(a)(2)." Id. (citations omitted).

There is no dispute, after the criminal convictions of the McGinn Smith principals, that the investments purchased by Dr. Weinar were part of a Ponzi scheme and that there was a conspiracy to sell such investments (through McGinn Smith registered representatives like Mr. Lex) in violation of the securities laws. The testimony at the hearing was that 100% of Mr. Lex's clients had purchased these investments. A reasonable inference based upon the evidence presented at the hearing was that Mr. Lex was aware of the McGinn Smith Ponzi scheme based upon his email exchanges with the principals of McGinn Smith regarding the delays in redemptions caused by a lack of cash (See Weinar Affidavit at ¶ 12; Exhibit G) and the documentary evidence showing that Mr. Lex sold the investment notes to Dr. Weinar prior to providing Dr. Weinar with the required disclosure documents that Dr. Weinar was supposed to execute prior to the transaction.  The required disclosure documents were only provided to Dr. Weinar well after the sale of the notes. (See Weinar Affidavit at ¶ 12). Thus, Plaintiff has made a prima facie showing of the conspiracy and alleged specific facts sufficient to warrant an

7

inference that Defendant was a member of the conspiracy. Chrysler Capital Corp., 778 F.Supp. at 1266; Lehigh Valley, 389 F.Supp. at 807.

## II.     THE COURT SHOULD DENY THE MOTION TO CHANGE VENUE

Defendant has moved in the alternative for a change of venue. Venue is a matter of convenience and is not jurisdictional. See Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 167-68 (1939); Rutland Railway Corp. v. Brotherhood of Locomotive Engineers, 307 F.2d 21, 29 (2d Cir. 1962) ("Venue in the federal courts is not a jurisdictional concept. We should not think about it in the metaphysical terms which have often been associated with considerations of jurisdiction. Venue is a concept of convenience." (citations omitted)).

In general, courts are not required to determine the "best venue" but merely a logical one with a substantial connection to the litigation. 28 U.S.C. § 1391(b). See Reliance Ins. Co. v. Polyvision Corp., 474 F.3d 54, 59 (2d Cir. 2007). Because the facts of this case span at least three states, there appears no venue significantly more convenient than this one. 28 U.S.C. § 1391(b). Furthermore, because the Arbitration was administered in this District and the underlying claims are based upon notes issued by New York corporations and sold by a New York securities broker-dealer, it can be said that New York has a substantial connection to the litigation. Finally, due to the nature of proceedings under the Federal Arbitration Act, factors such as the location of evidence or the convenience of witnesses are not a significant consideration.

## CONCLUSION

As demonstrated above, none of the grounds set forth in Defendant's Motion come close to showing that he is not subject to personal jurisdiction in New York. His arguments are both legally and factually insufficient; it is clear that he regularly "transacted business" in New York

8

and it is also clear that the underlying claims at issue in this case (Dr. Weinar's investments in the New York corporate notes) are not only "substantially related" to the business transacted by Defendant in New York; the underlying claims are <u>entirely</u> related to those business transactions. In short, the Motion should be denied and the Award should be confirmed under 9 U.S.C. § 9.

Dated: March 27, 2013
      New York, New York

                                      _/s/ Francis M. Curran_____
                                      Liam O'Brien (LO 3090)
                                      Francis M. Curran (FC 1158)
                                      McCormick & O'Brien LLP
                                      9 East 40th St. 4th Floor
                                      New York, NY 10016
                                      Tele: (212) 286-4471
                                      Fax:  (212) 504-9574
                                      email:  lobrien@mcoblaw.com
                                                 fcurran@mcoblaw.com

                                  **Counsel for Plaintiff Marvin Weinar**

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that on March 27, 2013 a true and correct copy of the foregoing was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent on March 27, 2013to those parties or counsel, if any, identified on the ECF system as non-registered participants.


                                                       _____/s/ Francis M. Curran_____